Christopher Neary v. Johnny Wright, M.D. and others. Good morning. Good morning, Your Honor. You may proceed. For the record, Assistant Attorney General Zenobia Graham Days here on behalf of the appellants, Dr. Johnny Wright, Dr. Johnny Wu, Dr. Monica Counsel, hasn't the time for this motion expired? No, Your Honor. There is a distinction between the decision that was rendered by the court on July 27th and the decision that was rendered by the court on September 6th. There have been significant changes in the complaint and based on those changes, the motion to dismiss that was filed on September 5th, 2017 is a new motion to dismiss. The appellants were not served with a complaint. They did not have notice of the complaint until August 14th of 2018. That isn't true for Dr. Wu. That's not true for Dr. Wu, but there is a distinction with regards to the claims that have been asserted against Dr. Wu. Originally, Dr. Wu was identified as the leader of Correctional Managed Health Care, the director of Correctional Managed Health Care. When we look at the amended complaint and the second amended complaint, the claim against Dr. Wu has shifted. If we look specifically at paragraph 112 of the second amended complaint, Dr. Wu is actually a part of the Utilization Review Panel in paragraph 112 of the second amended complaint, but when we look at paragraph 116 of the amended complaint, that is not the case. It's the same operative set of facts, isn't it? It's the same operative set of facts. He was actually part of the group that decided to deny the surgical consultation, and that is the basis of this appeal. Wasn't there an allegation in the first amended complaint that he was involved in the surgery denial? I think that they attempted to say he was involved in the surgical denial because he was the director of Correctional Managed Health Care. That's distinguished from being a participant of or a member of the Utilization Review Committee. There's no clearly established law to show that an independent medical panel that has never met an inmate, met the inmate, or treated the inmate has been held to have clearly violated that individual's constitutional rights. There is no clearly established law that would put the members of the panel on notice that their decision on that day in June of 2014 amounted to a constitutional violation. And there is a distinction as it relates to the second amended complaint and the first amended complaint because I, on behalf of the Connecticut Attorney General's Office, am required, legally required, to conduct an investigation. And I also have to be mindful of the fact that when it comes to representation, that is a choice that each individual government official has to make. I have to notify them that they have the opportunity to take advantage of our services, but they can make the determination. If I make arguments, substantive arguments, arguments related to qualified immunity, and then that government official decides that they don't want to be represented by the Office of the Attorney General, that could run into issues with regards to issue preclusion. That could... Why you didn't appeal the first ruling in this case? In this case, it would have been very difficult for me to appeal the first ruling because at that time, these appellants had not been identified. On July 26th... Because you knew who they were and the plaintiff didn't. Well, I will say that I gave the plaintiff 2,000... Did you know who these people, the John Does, were from the beginning? No, I did not. Were you forthcoming with the names? I was very forthcoming. When I was ordered by the court to turn over documentation after the subpoenas, I turned over over 2,000 pages of documents. When I was ordered by the court on July 27th, 2017, to identify the specific members, I didn't object. I complied. And I will say that throughout this process, I have complied. There's never been a motion to compel filed by the plaintiff because I've been very forthcoming. Counsel, do you accept everything in the plaintiff's complaint as true for the purposes of this motion? I do. And based on the allegations that are contained in this complaint, there is no clearly established law that would put these individuals on notice that their conduct is unlawful. There's nothing that is beyond debate. It has been very concerning for me because qualified immunity is immunity from suit. Immunity from suit. And despite the fact that there is no clearly established law, I'm here today to assert that these individuals are entitled to qualified immunity now. Now. Because there's nothing that would make it beyond debate. At the time that they made the determination... Did you make this argument to the district court who rejected your request for qualified immunity? I tried to make the argument after these individuals were served on September 5th, 2017, less than 30 days after these individuals were actually served with this complaint. When I look at the amended complaint, the members of the Utilization Review Panel are identified as John Doe's 1 through 10 over a two-year period. Is it the responsibility of the government to go on a fishing expedition as to who these individuals could possibly be? I will tell you that when I was served... Why would you call it a fishing expedition when you knew who these people were? On October... In October... Did you know who the people were? No, I did not. Not in October of 2016. And when we had a conversation with the court in January of 2017, at that time, I still did not know who the individuals were. Both of the parties were in the same set of circumstances, not knowing who these individuals were. The Utilization Review Committee is a revolving, rotating panel. And if we're talking about 10 potential people over a two-year period, I did not know. But I will tell you that after I was forced to identify these individuals, I did. After these individuals were served, I accepted service. I appeared the same day. And within 30 days, I filed a motion to dismiss. A motion to dismiss asserting that there is no clearly established law putting these individuals on no... You made that motion to the district court, didn't you? On September 5th of 2017, I did, Your Honor. I'm sorry, you made that motion to the district court? I made a motion, yes, I made that motion on September 5th, 2017. And the next day, it was rejected. It was rejected without an analysis. It was rejected without any indication as to what the clearly established law was. What about the first decision that the district court made? Didn't that have some analysis? It was a conflated analysis, Your Honor. If you review the... Okay, so you object to the quality of the analysis. But there was analysis in the first one, wasn't there? I think that the problem with the first analysis is that analysis does not include any indication as to what clearly established law would preclude these individuals from qualified immunity at the earliest possible stage. That analysis pretty much says to my clients, we'll deal with it at the summary judgment stage. We'll deal with it at the summary judgment stage. And the concern I have with that analysis is I was not given a meaningful opportunity to assert qualified immunity on behalf of these appellants. I was never given the opportunity to try and show the court that at the earliest possible... Your motion, what more of an opportunity do you need? The motion was rejected within 24 hours. Okay, but you lost. But you made the motion. You had the opportunity. I don't believe that I had the opportunity, a meaningful opportunity, because when the court addressed my motion, there was no analysis with regards to the individuals that were served. There was no analysis done as to my argument about qualified immunity as it relates to the Utilization Review Committee, as it relates to Dr. Johnny Wright. My original motion to dismiss that was filed in October of 2016, that motion merely stated that these individuals had not been served, had not been served. So I'm looking at this and I'm saying to myself, is there this expectation that I am to simultaneously argue lack of service and qualified immunity at the same time? Isn't it reasonable for an individual to expect that at the point of service, at the point that these people have been properly identified, have been served, then I can have an opportunity to assert an affirmative defense of qualified immunity? Isn't that the earliest possible stage for me? You made, isn't that the argument that you made in the first motion to dismiss? Didn't you make the qualified immunity argument? Not with regards to the members of the Utilization Review Committee. Not with regards to Dr. Wright. In that original motion to dismiss, the argument, I didn't represent them. I did not appear for them. I did not represent them. The argument that I made at that time was these individuals had not been served. We don't know who Laverne Wright is because Laverne Wright has never worked for Correctional Managed Health Care. That was the limitation of the argument. All right, your time has expired, but you have reserved two minutes for rebuttal. Thank you. We'll hear from the plaintiff. Good morning. Good morning, your honors, and may it please the court. My name is Andrea Pulaski-Bruno, and together with my colleague seated to my right, we represent the appellee, Christopher Neary. This appeal begins and ends with the standard of review for deciding qualified immunity at the motion to dismiss stage. As this court held in Barnett and McKenna, a motion to dismiss is a mismatch for qualified immunity and almost always a bad ground for a higher burden to show dismissal of qualified immunity at the motion to dismiss stage. But you heard a motion passed saying qualified immunity is immunity from suit. If they have to wait until summary judgment, they have to go through almost an entire lawsuit. How do you answer that, counsel? The decisions of this court have analyzed qualified immunity at a different level at the motion to dismiss stage and where the complaint, like our complaint, asserts clear facts showing that the inmate had a serious condition and that there was deliberate indifference, that qualified immunity should not be decided at that time. Qualified immunity should be decided at the motion for summary judgment stage before trial. The allegations in the second amended complaint show that there was deliberate indifference to a serious physical condition. Mr. Neary had a physical condition, painful lumps in his breasts. He experienced increasingly severe pain due to the diagnosed physical condition. And the defendants knew that Mr. Neary was suffering from severe pain. With that knowledge, they denied treatment, delayed treatment, and pursued a course of treatment that they knew to be ineffective and that would cause him to suffer and continue to suffer that severe pain. Can I ask you a question? Can you explain why you describe surgery as the only complete way to cure gynecomastia and its accompanying pain? By using the word completely, are you acknowledging in your allegations that other means of treating that condition could adequately alleviate the pain, even if not completely? To answer your question, Your Honor, the allegation comes because that's what the doctors who said at the time of his diagnosis, that surgery was the only complete way to stop the growth from continuing to grow and to alleviate the severe pain associated with that condition. We're not conceding that any other treatment would have completely alleviated his symptoms, his severe pain, or the physical aspect. The record does show some treatment, however, there are cases like this court's decision in Brock and Hathaway that indicate that where an inmate is suffering severe pain and the treatment is largely ineffective and the doctors know that it's ineffective and that they declined to do anything more to improve the situation, that that states a violation of the Eighth Amendment. Did you try to get the names of the defendants before you made the motion? Before the first motion to dismiss was made? Yes, Your Honor. We consulted with our client and reviewed the medical records that he had obtained from his file at that point in time. We identified Dr. Wright, albeit the wrong first name, however, the Attorney General's Office did accept service on behalf of Laverne Wright, who was named in the first amended complaint. And it was only for the first time that we learned that the incorrect first name was in the October 2016 motion to dismiss. We sought that information and discovery. I won't burden Your Honors with a belabored version of the facts, it's mostly set forth in our briefs, but that information that we could not glean from the medical records was not provided to us until the order in connection with the July 2017 denial of the motion to dismiss. Thank you. Defendants try to turn plaintiff's allegation on their head and rewrite the issues, claiming that there's not a clear violation of the law by saying that his condition is cosmetic. That condition is completely out of thin air. There's no allegations in the second amended complaint. In fact, the allegations show that he had severe pain from a physical condition. Severe pain, substantial pain, is a serious medical condition and the failure to provide treatment for that, as this Court stated in Brock and Hathaway, is a constitutional violation. Just turning briefly to respond to a couple of the arguments raised by the appellants as to the claims against Dr. Wu. Appellee maintains that Dr. Wu's claims on appeal in this action are untimely. The allegations in the first amended complaint and the second from paragraph 112 of the second amended complaint to paragraph 116 of the first amended complaint, the allegation has remained consistent that the URC, comprised of both John Doe's at that time, now identified, and Dr. Wu, violated his right by denying the surgical consultation. That has remained constant. Your argument is that if there was going to be an appeal for the denial of qualified immunity, it had to come within 30 days of the first decision, not sometime later. Yes, Your Honor, that's correct. Here, what happened was there was an unfavorable decision on the first motion to dismiss. There was no appeal, and instead, defendants simply refiled and reasserted that qualified immunity defense to get around the 30-day time limit that had already expired. Are you conceding that other than Dr. Wu, the other defendant appellants have jurisdiction? No, we do not concede that point, Your Honor. As we set forth in our brief, there are arguments as to why the other defendants could have sought an appeal of that earlier decision  No, they were never served? Well, as we pointed out earlier, Dr. Wright was in fact served, and they accepted service. As to the URC defendants who are identified as John Doe's, the first motion to dismiss was brought on behalf of all of the defendants. You can look at defendants' brief at page three, and they seem to agree with that statement. Certain arguments were asserted on their behalf. The court's decision, specifically in the record at page A60, analyzes those arguments as to the URC defendants, and found that because all of the allegations against them were the same as those against Dr. Wu, for the same reasons the court was not granting qualified immunity or dismissing the claims against Dr. Wu, the claims against the URC defendants would proceed. In closing, unless the court has other questions, I will simply point out that this case presents a simple issue. It's focused on the allegations of the second amended complaint. And here Mr. Neary has set forth facts that show a violation of this court's clearly established law, that he was in severe pain, that that pain increased, that defendants knew about that pain, and delayed treatment, denied treatment, and pursued a course of treatment that they knew was ineffective and would cause him to suffer additional pain. Thank you, counsel. Thank you. Counsel, you have two minutes for rebuttal. How do you respond to the allegations regarding the pain that plaintiffs suffered? I mean, you characterize this as a cosmetic concern, but they're clear allegations regarding the pain that he felt. Isn't that right? Those allegations are allegations that have been lodged against Dr. Nakfi. Dr. Nakfi is not a party to this appeal. This appeal is about the Utilization Review Committee and the determination that they made that Mr. Neary did not necessitate a surgical consultation. If we look at the request for relief that's contained within the second amended complaint as well as the original amended complaint, there's no request for relief with regards to the Utilization Review Committee and pain. And there is nothing that would have put these individual doctors on notice that at that time, the quality of treatment that was being provided by Dr. Nakfi was inadequate. I mean, if we look at the amended, the second amended complaint, the inmate has not identified concerns with Dr. Nakfi's care. He did not avail himself of the administrative remedy process. And when the Utilization Review Committee made a determination, that determination was not about pain. That determination was about whether or not Mr. Neary necessitated a surgical consultation. You don't accept the allegations of the complaint as true. I do accept the allegations as true. I do. But when I read the allegations, there is nothing, there's no claim that would put these individual Utilization Review Committee members on notice that on June 12th of 2014, Mr. Neary had concerns about pain. They had a request before them. And the request that was before them was whether or not Mr. Neary needed a surgical consultation. There is no allegation in the complaint that would establish these doctors to be plainly incompetent or in violation of legal authority. These individuals are entitled to qualified immunity, and they're entitled to qualified immunity now. There is no clearly established law that would make these discretionary decisions unlawful. Thank you, counsel. Judge Winter, any questions? No, I'm fine. Thank you. Thank you. We'll reserve decision. Thank you both.